UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**WILLIAM EDWARD SCISCO**,

        Plaintiff,

   v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security**,

        Defendant.

Case No. 6:15-cv-00678-KI

OPINION AND ORDER

   Merrill Schneider
   Schneider Kerr Law Offices
   P.O. Box 14490
   Portland, OR 97293

       Attorney for Plaintiff

   Billy J. Williams
   United States Attorney
   District of Oregon

Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Jordan D. Goddard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff William Scisco brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying his application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Scisco protectively filed an application for SSI on March 1, 2012, alleging disability beginning December 31, 2011. The application was denied initially and upon reconsideration. After a timely request for a hearing, Scisco, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 13, 2013.

On August 30, 2013, the ALJ issued a decision finding Scisco was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 20, 2015.

**DISABILITY ANALYSIS**

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

Page 4 - OPINION AND ORDER

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ initially concluded Scisco had no severe impairments. In an abundance of caution, however, the ALJ proceeded with the subsequent analysis in the event Scisco's degenerative disc disease did constitute a severe impairment.[1] If the impairment was severe, the ALJ determined it would not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Additionally, assuming the impairment qualified as severe, the ALJ found Scisco could perform the full range of light work, including his past relevant work as a cook.

## FACTS

Scisco was 52 years old at the time of the hearing, with a GED. His most recent job was a cook and dishwasher at a lounge. He testified he stopped working because of numbness in his leg and swelling in his feet. He worked off and on; he was in jail for five years and some years he worked under the table for his family building race cars. In the '90s, Scisco worked for a concrete company.

---

[1]"The only objective evidence of any medical condition in the record is the claimant's degenerative disc disease." Tr. 23.

Scisco provided no medical records from any treatment provider. An x-ray of his lumbar spine revealed mild multilevel degenerative disc disease. An x-ray of his left foot was negative for any irregularities. Scisco had left knee surgery in July 2006.

## DISCUSSION

Scisco asserts the ALJ erred in his severity analysis, and he challenges the ALJ's credibility analysis and treatment of the examining physician's opinion.

I.   Severity of Impairments

The Commissioner concedes the ALJ erred in labeling Scisco's impairments as nonsevere. However, the Commissioner insists the error was harmless since the ALJ proceeded to address the remaining steps. Scisco makes no argument to the contrary. Since the ALJ analyzed Scisco's claim through step four, the ALJ's error was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

II.  Credibility Analysis

Scisco testified he could no longer work because his leg was going numb, his back would start bothering him, and his feet would swell up, and he was afraid he would fall into the deep fryer. He could sit for an hour before needing to lie down, and he could walk for 20 minutes before his back started to bother him. The longest he could walk was half a mile. His left foot felt numb if he stood in one spot too long. He cooked and cleaned in short spurts, and while cooking he held onto the counter.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce

some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).[2]

      The ALJ noted the lack of medical evidence to support Scisco's testimony, commenting Scisco "has not even sought out emergency care, which suggests his symptoms may not have been as serious as he has alleged in connection with this application and appeal." Tr. 21. The ALJ also noted more generally that Scisco had not sought medical treatment for his complaints. The x-rays reflected mild findings, and nothing in the record indicated Scisco required any follow-up care after his 2006 surgery on the left knee. Dr. Armstrong-Murphy reported no diagnosable knee condition. The ALJ also reviewed Scisco's activities and opined they were not

---

[2] The Commissioner suggests the clear and convincing standard need not control the analysis, encouraging application of the more deferential regulatory requirement for specific reasons supported by substantial evidence. Def.'s Br. 6, n.1. The Ninth Circuit has rejected her argument. *See Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (reasserting that the ALJ must provide "specific, clear and convincing reasons" to support a credibility analysis).

as limited as he would have expected given Scisco's testimony; Scisco lived by himself, prepared his own meals, vacuumed, dusted, and shopped. He watched televison, used the computer, visited with friends, and finished what he started. Finally, the ALJ pointed out Scisco's work history was spotty, and when he did work he did not report his income.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The mild imaging results suggest Scisco's impairments are not as severe as he reported.

In addition, Scisco's complete lack of treatment also undermines his testimony. Scisco argues his conditions are not the type normally requiring emergency care and the ALJ did not consider the cost associated with emergency care. Regardless of whether Scisco's condition warranted emergency care, the ALJ noted more generally that "there is no evidence the claimant has treated for any medical complaints[.]" Tr. 23. This is a clear and convincing reason to question the validity of Scisco's complaints. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained failure to seek treatment or to follow a prescribed course of treatment is a credibility factor); *Smolen v. Chater*, 80 F.3d, 1273, 1284 (9th Cir. 1996) (same). While Scisco contends the ALJ should have inferred an inability to afford medical care, Scisco never provided any explanation for his lack of treatment or explained why he listed no medications (even over-the-counter options) in his applications. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (claimant's failure to assert reason for failure to seek treatment can be credibility factor); *Smolen*, 80 F.3d at 1284 (claimant testified she had not sought treatment because she could not afford

treatment). Here, the ALJ was required to resolve the ambiguous evidence about the reason for Scisco's failure to seek treatment, and his interpretation was a rational one.

While Scisco's daily activities are not obviously inconsistent with his stated limitations, and therefore not particularly convincing, his work history and the fact that he worked under the table are clear and convincing reasons to question his statements. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (spotty work history a valid reason to reject testimony). Scisco points to his work history in the four years just prior to the date he filed his applications, but the ALJ was entitled to consider the *seven* years when he earned no money to, at the most, just $2,500 a year, particularly when considering Scisco's testimony that he worked under the table.[3] Tr. 137 (2001 to 2007). Again, the ALJ is responsible for weighing the claimant's credibility. His finding is supported by substantial evidence, and I am not permitted to "engage in second-guessing." *Tommasetti*, 533 F.3d at 1039.

In sum, any error in analyzing Scisco's daily activities does not undermine the ALJ's entire credibility assessment. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ did not err in assessing Scisco's credibility on the whole.

III.  Medical Evidence

Scisco offered no medical records from any treating provider. He did, however, undergo a comprehensive musculoskeletal examination performed by Maria Armstrong-Murphy, M.D., on May 11, 2012. Dr. Armstrong-Murphy summarized Scisco's complaints of low back pain and

---

[3]Scisco argues the ALJ did not rely on his unreported income in the credibility analysis, but the ALJ specifically discussed it. Tr. 22.

discomfort, as well as numbness. Scisco reported he was a cook for more than ten years,[4] but his last position ended in November 2011 because of his back and leg pain. He reported he could walk for 15 minutes at a time before developing numbness and pain, and he could sit for 30 minutes before needing to change position.

      Dr. Armstrong-Murphy observed Scisco walk independently through the room, with normal tandem gait testing without loss of balance, but with difficulty walking on his toes. She noted some mild thoracolumbar scoliosis at the thoracic lumbar junction. He had a symmetrical scapular, but his pelvis appeared higher on the right than on the left. She tested his lumbar, cervical, ankle and knee range of motion. He appeared flat footed, and she noted an L4-5 distribution of nerve loss on the left leg. Scisco demonstrated full strength in the upper and lower extremities, but positive left leg cramping and tenderness with straight leg testing. Dr. Armstrong-Murphy diagnosed degenerative disc disease of the lumbar spine, mild scoliosis of the thoracolumbar junction awaiting x-ray, left leg radicular symptomatoloy, bilateral flat foot with numbness, and moderate stigmata suggestive of peripheral vascular disease on examination.

      Dr. Armstrong-Murphy opined that "reasonable" limitations would include: standing and walking for 15 minutes at a time, taking breaks as needed, for four hours in a day; sitting with breaks as needed; lifting objects above 40 pounds with another colleague; no excessive stooping or bending; and no carrying objects above 20 pounds from the floor to the waist level. Tr. 219.

      The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and

---

[4]Scisco's earnings record does not support this statement. Tr. 137.

Page 10 - OPINION AND ORDER

observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

Dr. Armstrong-Murphy's opinion is contradicted by the state agency consultants Neal Berner, M.D., and Martin B. Lahr, M.D., requiring the ALJ to provide specific and legitimate reasons to discount the examining physician's functional assessment. The ALJ pointed to the objective medical evidence, which indicated mild findings. *Batson*, 359 F.3d at 1195 (ALJ not required to accept physician's opinion when it is unsupported by the record as a whole). Indeed, as the ALJ commented, only Scisco's degenerative disc disease is supported by the medical evidence. The ALJ also concluded Dr. Armstrong-Murphy simply accepted Scisco's reported limitations. The record reflects the doctor appears to have simply inserted into her functional limitations Scisco's report to her that he could only walk for 15 minutes, without explaining her opinion. *Tommasetti*, 533 F.3d at 1041 (physician's opinion may be rejected if it is "based to a large extent on a claimant's self-reports that have been properly discounted as incredible"). The ALJ specifically referenced the doctor's objective findings of normal tandem gait, no assistive

devices, and no loss of balance. The ALJ properly identified several specific and legitimate reasons to weigh Dr. Armstrong-Murphy's opinion in the manner he did.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___28th___ day of March, 2016.

                     /s/ Garr M. King
                     Garr M. King
                     United States District Judge